IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELVER HERNANDEZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 23 C 2725 |
| ) | |
| DAVID MITCHELL, Warden, ) | |
| Pinckneyville Correctional Center, ) | |
| ) | |
| Respondent. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a 2009 bench trial in the Circuit Court of Cook County, Elver Hernandez was convicted of first-degree murder and sentenced to 84 years' imprisonment. Hernandez has filed a habeas corpus petition under 28 U.S.C. § 2254, arguing that he is actually innocent of the charges and that his post-conviction appellate counsel was ineffective. For the following reasons, the Court denies the petition.

### Background

The following facts taken from the state appellate court's decision on direct appeal, *People v. Hernandez*, 2012 IL App (2d) 110817-U, are presumed correct under 28 U.S.C. § 2254(e)(1). Hernandez was a member of the Latin Kings street gang. On May 8, 2009, gang leaders instructed Hernandez to carry out a "smash on sight" (SOS) order against a former gang member named Rafael Juarez. This meant that Hernandez "was expected to beat up [Juarez] or destroy [his] property." *Id.* ¶ 4. Later that night,

Hernandez and his younger brother, Edwin, decided to carry out the SOS order. Hernandez "armed himself with a pipe while Edwin made a Molotov cocktail out of a beer bottle." *Id.* ¶ 7. They walked to Juarez's house, where Hernandez "used the pipe to smash out the windows of a van parked in the driveway while Edwin threw the Molotov cocktail onto the porch." *Id.* The house caught fire, killing a 12-year-old boy inside and severely injuring his sister and mother.

Hernandez confessed to the crime in a videotaped statement to police. He was subsequently charged with six counts of first-degree murder (with each count representing a different legal basis for first-degree murder arising from the death of Jorge Juarez) and three counts of aggravated arson. Defense counsel moved to suppress the confession on the grounds that it was involuntary because police allegedly promised Hernandez the interview would not be recorded. After a lengthy evidentiary hearing, the trial court denied the motion. Hernandez ultimately pleaded not guilty, waived his right to a jury trial, and proceeded with a stipulated bench trial for the purpose of preserving his right to appeal the denial of his suppression motion. At the conclusion of the bench trial, the court stated:

> Clearly there is a lot of overlap in the different counts of the indictment. And . . . at the appropriate time we can talk about what might merge into what. But at this juncture, the Court enters judgment of guilty on each count of the indictment.

Ex. B, Rep. of Proceedings at R715.

At sentencing, the trial court again brought up the merger issue and instructed the prosecution that it needed to decide on which of the murder counts it desired to proceed. The prosecution chose to proceed on count two of the indictment, which alleged that Hernandez committed first-degree murder when he "threw an object

2

containing a flammable substance at [the Juarez residence], causing a fire at that residence, knowing that such acts created a strong probability of death or great bodily harm to Jorge Juarez, thereby causing the death of Jorge Juarez." Ex. C, Common L. Rec. at C00013. The court then concluded that the murder and arson counts merged and therefore imposed judgment on a single count of first-degree murder. The court sentenced Hernandez to a prison term of 84 years.

Hernandez appealed his conviction, arguing that the trial court erred in (1) denying his motion to suppress the confession; (2) finding, for sentencing purposes, that he was an "organizer" or "supervisor" of a crime committed in furtherance of the criminal activities of an organized gang; and (3) assessing a public defender fee without considering his ability to pay. *Id.* ¶ 2. The appellate court affirmed the conviction on December 26, 2012. Hernandez did not file a petition for leave to appeal (PLA) to the Illinois Supreme Court.

On June 24, 2013, Hernandez filed a *pro se* post-conviction petition under 725 ILCS 5/122-1. He asserted that (1) his three-year mandatory supervised release term was unconstitutional and (2) his trial counsel was ineffective for various reasons. The trial court denied the post-conviction petition, and the appellate court affirmed. The Illinois Supreme Court denied Hernandez's timely PLA on January 28, 2015.

On March 19, 2018, Hernandez filed a motion for leave to file a successive post-conviction petition. He asserted that the evidence was insufficient to support his conviction and that his sentence amounted to excessive punishment in violation of his state and federal constitutional rights. The motion was denied, the appellate court affirmed, and the Illinois Supreme Court denied Hernandez's PLA on September 27,

3

2023.

On September 1, 2020, Hernandez filed a second motion for leave to file a successive post-conviction petition. This time, he asserted that he was actually innocent as a result of the sufficiency-of-the-evidence issue, that his confession was improperly presented to the grand jury and at trial, and that his trial and appellate counsel were ineffective. The trial court denied the motion. On appeal, his appointed counsel filed a motion to withdraw from representing Hernandez on appeal, stating there were no issues of arguable merit. The appellate court affirmed granted the motion to withdraw and affirmed the trial court's decision on December 29, 2021. Hernandez did not file a PLA to the Illinois Supreme Court.

On June 30, 2021, Hernandez filed a third motion for leave to file a successive post-conviction petition. He again asserted that he was actually innocent because the prosecution failed to prove that he was guilty of "knowing murder" as opposed to felony murder. *People v. Hernandez*, 2-21-0612, at *2 (Ill. App. Ct. Sept. 12, 2022). The trial court denied Hernandez's motion. On appeal, his appointed counsel again filed a motion to withdraw due to a lack of any issue of arguable merit to appeal. The appellate court granted the motion and affirmed the trial court's decision. The Illinois Supreme Court denied Hernandez's PLA on January 25, 2023.

On May 1, 2023, Hernandez filed the present section 2254 petition for a writ of habeas corpus. He raises two arguments in support of his petition. First, he argues that he is actually innocent of the crime of conviction because the evidence was insufficient to prove beyond a reasonable doubt that he "knew or should have known that his acts would have created great bodily harm and/or death." Pet.'s Mem. of L. at

4

1.[1] Second, he argues that his appointed appellate defender violated his constitutional rights by seeking to withdraw from representing Hernandez in his appeal of the court's denial of his motion to file a successive post-conviction petition due to a lack of merit. *See id.* at 8.

## Discussion

A petitioner in custody under a state court judgment is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To seek federal relief, a petitioner must first exhaust state remedies by presenting each claim "through one complete round of review in state court." *Gonzales v. Eplett*, 77 F.4th 585, 590 (7th Cir. 2023); 28 U.S.C. § 2254(b)(1). In addition, a section 2254 petition must be filed within the one-year period of limitations established by 28 U.S.C. § 2244(d).

If these requirements are satisfied, a federal court may reach the merits of the petitioner's claims but must defer to "the last reasoned state court decision reached on the merits." *Gonzales*, 77 F.4th at 591. A federal court may issue a writ of habeas corpus only if that state court decision "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

---

[1] For purposes of readability, the Court has altered the capitalization and omitted the use of underlining in all quotations from Hernandez's briefs throughout this opinion.

A.   **Actual innocence and sufficiency of the evidence**

Hernandez first argues that he is "actually innocent" of the crime of conviction because the evidence was insufficient to prove beyond a reasonable doubt that he "knew or should have known that his acts would have created great bodily harm and/or death." Pet.'s Mem. of L. at 1. Although Hernandez frames his claim as one of actual innocence, it is more appropriately characterized as a challenge to the sufficiency of the evidence presented at his trial. This is because Hernandez's argument is that the prosecution failed to prove that he had the requisite state of mind. This is a sufficiency-of-the-evidence claim. Hernandez is not contending that some new evidence shows that he did not have the requisite state of mind as a factual matter, which is what a claim of "actual innocence" involves in habeas corpus lingo. *See id.* at 3–4 ("Petitioner's actual innocence claim, as a 'matter of law' presents a simple claim . . . One that can be easily answered by reviewing the official records . . . the State presented no evidence, circumstantial nor direct evidence, that the petitioner, or his brother, possessed the [required] mental state. . . ."). Moreover, the Court notes that the Seventh Circuit has never held that a "standalone" claim of actual innocence is cognizable under section 2254. *Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021). Regardless of whether the claim is framed as a sufficiency-of-the-evidence claim or an actual-innocence claim, however, the Court concludes that Hernandez is not entitled to a writ of habeas corpus under section 2254 because his claim is untimely.

1.   **Statute of limitations**

Under section 2244(d)(1):

A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State

6

    court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In addition, section 2244(d)(2) provides that the relevant limitations period is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim."

    The State argues that the relevant accrual date here is provided by subsection (A). Hernandez's conviction became final on January 30, 2013, which is the date on which the time period expired for filing a PLA to the Illinois Supreme Court on direct review. The limitations period was tolled from when Hernandez filed his post-conviction petition on June 24, 2013[2] until his post-conviction PLA was denied on January 28, 2015. Thus, unless one of the other subsections of section 2244(d)(1) applies, the one-year limitations period for Hernandez's section 2254 claim expired on September 7,

---

[2] The State asserts that the Illinois appellate court's opinion mistakenly stated that Hernandez's petition was filed on June 4, 2013. See State's Resp. at 8 n.3. Hernandez does not dispute the State's assertion. Whether the petition was filed on June 4, 2013 or June 24, 2013 makes no difference to the outcome of this case because the one-year period of limitations still would have expired many years before Hernandez filed his section 2254 petition on May 1, 2023.

7

2015. *See* 28 U.S.C. § 2244(d)(1)(A). Although Hernandez filed three motions for leave to file successive post-conviction petitions, none of these motions had any tolling effect because they were not filed until after the limitations period expired on September 7, 2015. *See De Jesus v. Acevedo*, 567 F.3d 941 (2009) (rejecting the argument that subsequent state proceedings "restart" or "retroactively toll" an expired limitations period).

Subsection 2244(d)(1)(B) does not apply to the circumstances here. Although Hernandez argues that COVID-19 restrictions imposed while he was in state custody prevented him from filing his petition sooner, the relevant question is whether these restrictions "prevented [him] from filing" his petition *in 2015*. Because the pandemic restrictions did not begin until 2020, they are not relevant regarding whether the State prevented him from filing in 2015.

Subsection 2244(d)(1)(C) does not apply. Hernandez does not argue, nor does the Court see any grounds for finding, that his claims turn on a constitutional right newly recognized by the Supreme Court and retroactively applicable on collateral review.

Finally, Hernandez argues that subsection 2244(d)(1)(D) applies because "his actual innocence was not discovered until both the trial court and the appellate court, when 'reciting,' the record evidence and based on the record evidence, pointed out the fact that petitioner is actually guilty of felony murder, under 720 ILCS 5/9-1(a)(3) and not knowing murder, under 730 ILCS 5/9-1(a)(2) because as both courts pointed out that: 'the victim died in the "course of an arson."'" Pet.'s Reply at 1–2. Hernandez states that, after "the paralegal at Lawrence Correctional Center pointed out this fact," he "immediately filed" another post-conviction petition in state court based on this theory.

*Id.* at 2.

The relevant standard, however, is not whether Hernandez himself was subjectively aware of his potential claim. Rather, the question is when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The factual predicate supporting the claim that Hernandez raises clearly could have been discovered at the time of his conviction. In fact, defense counsel raised the same argument—albeit briefly—in a post-trial motion, which he argued at a hearing with Hernandez present:

> And the only thing I would bring up regarding reasonable doubt is I don't believe that the State has shown the necessary intent regarding the murder charges on behalf of Mr. Hernandez. The Court heard through Mr. Hernandez's own statement on the videotape that basically what happened was not what he had planned. His exact words, if the Court will recall, is it wasn't supposed to go down like this.

Ex. B, Rep. of Proceedings at R724. In response, the following exchange between the prosecution and the trial court took place:

> Prosecution: As to paragraph 1 of the [defense's post-trial] motion, which deals with reasonable doubt, as the Court is aware . . . there is a nine-count indictment in this case and, as the Court knows, we have charged multiple counts of first degree murder and aggravated arson.
>
> The Court: Let me just ask you about that. After the bench trial the Court found the defendant guilty on all of the counts, but indicated at the time it would enter judgment of conviction and sentence as appropriate most likely upon one of them. In light of the argument . . . what count, if any, do you think, just in light of that one point, would be the most appropriate for the Court to enter judgment on in light of the post-trial motion? . . . Insofar as sufficiency of the evidence with specific intent, the State's got murder charged every which way—
>
> Prosecution: Exactly, Judge.
>
> The Court: —from intent to kill down to felony murder.
>
> Prosecution: And I believe we've met our burden as to all of those. At the

9

> time if we got to the point of sentencing we were going to ask the Court to sentence the defendant on count 2, which is the count that indicates—
>
> The Court: Knowing strong probability of death.
>
> Prosecution: —strong probability that his acts would cause death or great bodily harm. . . . So that's certainly the count that would be most easily proved by the fact pattern in this particular case. . . . I'm not saying the other counts we didn't meet our burden on, Judge, but I think for purposes of the motion and sentence that count 2 is the most appropriate one to enter judgment on and I believe the facts are sufficient for a finding of guilty as to that count.

*Id.* at R732–33. Ultimately, the trial court denied the defense's motion:

> Turning to the sufficiency of the evidence, you briefly addressed that. Likewise, I'll briefly address it. Various counts of the indictment allege the defendant acted in such a way as to cause the death of Rafael Juarez. Obviously issues regarding transferred intent come into play. Also issues regarding a defendant under some circumstances acting in certain ways, the law presumes that they intend the natural and probable consequences of their act.
>
> Here the Court heard the evidence in a bench trial. The Court explicitly I think, but at least implicitly made credibility determinations and factual findings based upon the evidence that it was presented . . . based upon those the Court found sufficient evidence to find the defendant guilty of each count in the indictment. The Court adheres to those findings. Accordingly, your post-trial motion is denied.

*Id.* at R749–50. These proceedings clearly demonstrate that the factual and legal underpinnings of the claim Hernandez now raises were available at the time of his conviction. Subsection (D) therefore does not apply.

In sum, the Court concludes that Hernandez's first claim is time-barred because the one-year period of limitations expired on September 7, 2015. Hernandez argues that the Court may still review his claim on the merits for two reasons. First, he argues that the Court should equitably toll the statute of limitations. Second, he argues that his actual innocence excuses the untimeliness of his petition.

10

### 2. Equitable tolling

The Court may equitably toll the statute of limitations of a section 2254 petition if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016). To meet the latter requirement, a petitioner must show that "the circumstances that caused [his] delay are both extraordinary *and* beyond [his] control." *Id.* at 872. As the Court has just explained, the argument that Hernandez now presses was available at the time of his conviction, and he has pointed to no extraordinary circumstances beyond his control that prevented his timely pursuit of this argument. Hernandez points to the COVID-19 pandemic, but again, the limitations period expired long before the pandemic began. The Court therefore declines to equitably toll the statute of limitations.

### 3. Actual innocence

Although Hernandez is correct that a petitioner's showing of actual innocence can serve as a "gateway" that permits a Court to review procedurally defaulted claims, *see Schlup v. Delo*, 513 U.S. 298, 315 (1995), he has not made a showing of actual innocence. A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327). Hernandez points to no new evidence that shows that he did not commit first-degree murder. Instead, he argues only that he has newly discovered that the prosecution did not carry its burden prove that he knew that his actions created a strong probability of death or great bodily harm.

11

That is not sufficient to show actual innocence as a factual matter. The Court therefore cannot excuse the untimeliness of his petition.

**B.     Ineffectiveness of post-conviction appellate counsel**

Hernandez also argues that his post-conviction appellate counsel was ineffective based on counsel's submission of a motion to withdraw from representing Hernandez in his appeal from the court's denial of his motion for leave to file a successive post-conviction petition. This claim arguably is timely under the one-year limitations period because the facts underlying the claim—i.e., the appellate court's order granting the motion to withdraw and denying the appeal—did not take place until September 2022. Nevertheless, Hernandez's claim is barred by 28 U.S.C. § 2254(i), which states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." Moreover, the Supreme Court has held that there is "no federal constitutional right to counsel . . . when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). To the extent that Hernandez seeks to frame his claim as a due process claim rather than an ineffective assistance of counsel claim, he is not entitled to relief under section 2254 because "[i]t is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing." *Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016). The Court therefore cannot grant a writ of habeas corpus on this basis.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment

stating: Elver Hernandez's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is denied [dkt. no. 1]. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c) because it can find nothing to suggest that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

Date: June 10, 2024

_____
MATTHEW F. KENNELLY
United States District Judge